Good morning, counsel. We express condolences for the passing of your client, but we asked you to come make your arguments today in any event and also giving you time to figure out how you want to handle the procedural aspect of the case because, as you may or may not be aware, Judge Kleinfeld is from Fairbanks, Alaska, and Judge Ponser is from Springfield, Massachusetts. So to reconvene this particular panel again would be very difficult, if not impractical. So we thought we should give you the opportunity to make the arguments, and then you can determine later procedurally how you want to proceed. Fair enough, Your Honor. Good morning, and may it please the Court. This is Rafael Nandel-Flores, counsel for Safari Club International. And actually counsel for Mr. Whipple, Joseph Nardelli, is here with me, but I will be handling appellant's argument unless you have any specific questions for Mr. Whipple's counsel. And I also would respectfully like to reserve five minutes of my time for rebuttal. All right. Watch your clock, please. Okay. So the fundamental issue in this case is whether or not the district court abused its discretion in denying appellant's application for a preliminary injunction, preventing Mr. Rudolph from disseminating an illegally recorded videotape, either disseminating it or using it. Could you help me on the California statute? Let me tell you what concerns me. Sure. We know from the California statute that the case turns on whether this is a confidential communication. Now, when I look at the words of the statute, that it excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceedings open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded, my first thought is they use stem generis, things of the same kind. And so I'm thinking, what's of the same kind as legislative, judicial, executive, or administrative proceeding that would explain what they mean by any other? And I think, well, it would be like people talking to a reporter on the courthouse steps, that sort of thing. So that suggests that this does not fall within the exception. On the other hand, when I look at the words overheard or recorded, well, if you're talking to somebody at a restaurant, you don't expect to be recorded, or a surreptitious recording at a restaurant would be probably kind of shocking to most people. However, you do know that you're at risk of being overheard. That's why we typically avoid talking about confidential stuff involving our cases at restaurants. When I look at the cases, it looks like all the federal district court cases say, if anybody might overhear you, it's not confidential. But when I look at the California cases, they don't seem to say that. The California cases seem to say, if you wouldn't expect to be recorded, it's confidential. And I can't figure out exactly how I should reconcile all this. That's a fair point, Your Honor, and I would think that the case- The hard part of the case and the interesting part. Well, the first thing I would note is under the alternative test in winter, I don't necessarily think that you need to get into whether or not there's absolutely strong evidence that it was a confidential communication. All you need to decide is whether or not this creates a serious question. And to your point, there does seem to be a little bit of a disconnect between the federal district court opinions and the California appellate case law. And we're not supposed to follow the federal district court opinions. We're supposed to follow the California Supreme Court opinion and use the California Court of Appeal opinions as guidance to what the Supreme Court would be likely to do. And you're exactly right, Your Honor. And to that point, at the very least, it raises a serious question. And I'll point to a couple of cases that were cited in the briefs. In the KCOP case, for example, it was undisputed that the entire conversation in the doctor's office was overheard by a third party. Now, granted, that third party was with- In cahoots. In cahoots and was recording the conversation. But, of course, that person overheard the entire conversation, and yet the Court of Appeal in that case nonetheless held that there was still a reasonable expectation of privacy on behalf of the doctor. That's a distinction between the recording kind of confidential and the privilege kind of confidential.  You have to get your client's mother out of your office to keep the privilege when you talk to your juvenile client. So your position is that two people talking in a restaurant where waiters are walking by, where there are adjoining tables, are speaking confidentially and are protected by 632? In this circumstance, yes. We could come up with a- What's special about this circumstance? Well, it's not necessarily that the circumstance is special. But, for example, if there was tons of contact with the waiter and the waiter could overhear the entire conversation, that would vitiate the reasonable expectation of privacy. But I would point, Your Honor, to Frio v. Superior Court where, in that case, the analysis as to what the reasonable expectation of privacy was, was that one part of the conversation just needs to have a reasonable expectation that no one is listening in and that the conversation isn't being recorded. There's no evidence in the record that the waiters were listening in. He isn't listening in. The language of the California Supreme Court is overheard, that it could be overheard. Correct. I mean, there is language that are affected. There's other appellate decisions. I'm looking at the California Supreme Court decisions. And they use the expression overheard or recorded. Correct. And I would say if you synthesize the case law, the overheard is listening in. That's our position based on other California appellate case law. There's also a line of authority that supports it being interpreted as a reasonable expectation that it would not be disclosed to third parties. Correct. Correct. And to that point, I mean, I think the evidence in the record shows that Mr. Whipple did not have an expectation that this conversation was going to be, the recording of the conversation was going to be disclosed or even that the conversation was going to be recorded in the first instance. I think it's important to know that based on the factual record below, Appelli and Mr. Whipple were friends. They were personal friends on top of having ---- Well, yes and no. They're suing each other. Correct. But when this conversation took place, it's undisputed that Mr. Rudolph initiated the conversation as friends. Let's say they're not such good friends. I think that's pretty weak. Let's say they're suing each other. They're trying to work things out. They've been friends in the past, and they've known each other a really long time. And I'm thinking, suppose that a couple of your clients are trying to work things out, and they meet at a restaurant, or lawyers are trying to work things out. We've all settled cases that way, I think, as lawyers. I wrote one on a placemat. Do you expect that a waiter coming by may hear a few words? Do you expect to be recorded or expect not to be recorded in that kind of conversation? I absolutely expect not to be recorded, particularly, again, in the context of the conversation. Granted, Your Honor, I understand that their friendship may not have been the best, and they may have been coming close to being former friends because they were involved in litigation. It's like trying to work out a case that's important to them both. Correct. And in the transcript of the, in our position, illegally recorded conversation, there are multiple instances where Mr. Rudolph makes reference to them being friends, so you and I are friends, and Mr. Rudolph is feigning to try and understand what happened and why things happened the way they did. So it was not an adversarial conversation. It was framed as a conversation between friends. Let me just nudge you along to the broader picture here for a second. This is an abusive discretion standard. This is a trial judge who's weighing four factors. He gives your adversary this one. It's weak on irreparable harm, isn't it? Where on earth is the irreparable harm here? What was the evidence of irreparable harm? I know that the trial judge found barely in your favor or very slightly in your favor on irreparable harm. This is a very weak case on irreparable harm, isn't it? Was there evidence that you lost membership, that you lost money, that you lost anything? The video was already out. Where's the irreparable harm here? What was the evidence of irreparable harm? Well, Your Honor, I respectfully disagree that there's no evidence of irreparable harm. Oh, I'm not saying that. I'm asking you to tell me what the evidence was. Well, number one, under Penal Code Section 632D, the statute, that portion of the statute expressly prohibits the use of the ---- That's circular. You're saying the irreparable harm as it violates the law, but that's an issue yet to be determined. What other irreparable harm? Well, I respectfully disagree that it's not circular because if you look at Apelli's answering brief, throughout the brief their whole point is that, look, this video exonerates our client. This video is going to be great for us. This unlawful recording is going to be great for us if we can use it in the parallel Pennsylvania action. So therefore, I mean, that's the key conduct that is sought to be enjoined is a violation of the statute. And remember, the whole point behind ---- But that's not harm. That's a good thing if it's legal to make the recording. Sure. If it turns out that the recording was lawful, but obviously it's our position that it's unlawful. Is there any other irreparable harm? I think Judge Ponsor and I have exactly the same question there. And I'd like to know if there's another answer besides the purported illegality. Well, of course, the damage to Apelli Whipple's reputation of having the video out there and it being used and damaging his reputation if, indeed, the transcript is as damaging as Apelli's contended is. So I had the opportunity to look at the videotape. And Mr. Whipple didn't say anything like, I'm going to tell you this information and you can't tell anybody else and it's confidential. And I'm just telling this to you. I mean, if it's true, then it's evidence that Mr. Randolph can rely upon to prevail in his lawsuit. And so Mr. Whipple doesn't put any kind of confidentiality cone of silence shield on this information that he's giving to his adversary in the lawsuit. And it's pretty shocking information because, I mean, it really does sound as though, I mean, I believe Mr. Whipple is as though Mr. Randolph was being set up by some pretty untrustworthy people within the club. But he never says, but you can't use it. You can't tell anyone. And you're suing the club. He never says you can't use it as evidence. So I don't understand how he could have possibly had an expectation that this would be kept confidential. Well, Your Honor, I would point you to the Coulter v. Bank of America case. We're talking about two separate interests. You're correct that there's nothing to stop Mr. Rudolph from recounting the conversation in his version of events in a separate legal proceeding. 632, Penal Code Section 632 doesn't prohibit that. What it prohibits is the recording of the conversation and the use of that recording. And so what matters for purposes of the application for preliminary injunction is did Mr. Whipple have an expectation that the conversation wouldn't be recorded? So that gets me to even another more practical question, which is in this day and age with your cell phones and the video recorder. And I mean, I have. Do you really have an expectation of privacy that not everything that you're doing in a public restaurant is not is not going to be recorded by videotape on somebody's cell phone? Are your pictures not going to be taken and put up on YouTube or somewhere else? I mean, is that in this day and age in the context of the social media that we're in? Does anyone really have a reasonable expectation that that's not going to occur? Well, Your Honor, to your point, there may be there may be no expectation of privacy in the sense that maybe snippets, you might have pictures taken of you in a restaurant, maybe someone might videotape you for for a discrete period of time. But there still has to be a reasonable expectation of privacy that an entire four or five hour conversation that you're not going to be secretly recorded without your consent. I mean, that's fundamentally different than maybe someone at the table next to you taking your picture or maybe recording 30 seconds of what you may have said. So I think that you might have a chance of winning at trial. But the standard for getting an injunction in a T.R.O. is much harder. At this point. Under winter. You have two people who are suing each other. They're meeting. One person is revealing something which is absolutely damning about his side of the case. And then the person later on is going to say, this is what he told me when we were at lunch. And your client is going to have to either lie or deny having ever said it. And then the extra step of recording it is, oh, my goodness, I'm entitled to a preliminary injunction. And the district court judge is looking at this motion for preliminary injunction and denies it as an exercise of his discretion. I'm having a hard time seeing how that's an abuse of discretion. Well, Your Honor, we've talked about this. It's a serious legal question. I'll try and collapse in my shortened period of time the bounds of hardships, the irreparable injury in the public interest. And I understand there's been some disagreeing from the panel. But the critical thing from our perspective is that Appellee's only proffered interest as all those three factors is this thing is great for us. Let us use it in this parallel action in Federal court, in Pennsylvania, in this parallel. But that's fine if it's not illegal. I mean, when something is true, well, like when you have a dispute about whether a policeman acted improperly in an arrest, it's just great when they have one of those recording devices in the police car and you watch the whole thing on TV, as opposed to just listening to everybody and wondering which ones are lying and how much. One thing I would respond with, Justice Kleinfeld, is that under the alternative test under Winter, appellants don't need to establish a likelihood of success. They just need to show that this is a serious legal question. I'm going to the irreparable harm part. You're arguing the fact that everybody will see it as the irreparable harm. But it's not harm. It's good if it's okay to record it. Of course, and that assumes there's been no violation of the statute. And that has not been determined. And, in fact, at the district court level, that cause of action survived a motion to dismiss it. Let me ask you something different. Has anyone used the AU-STEM generous interpretation of this California statute? I didn't notice it in the cases, saying that the catch-all clause means speech like the denoted speech, just the way the Supreme Court has often done in other circumstances of statutory construction lately. So it doesn't mean any other speech. It just means other speech of the same sort. Have any of the cases done that? Your Honor, respectfully, I don't think so. And, unfortunately, there is not a whole lot of authority under this Penal Code provision. And I think as the panel recognized, there is some disconnect from district court cases and California appellate court cases. And even if you just look at the California appellate courts, there's a seeming disconnect from overheard as opposed to listening in. So the short answer to your question is that that has not been answered. That's where I come down in terms of the abuse of discretion standard here. The district court judge, maybe you'll prevail. You've still got your trial going, presumably. Maybe you'll ultimately prevail and find that there was a 632 violation here. He found, at least at this stage, there hasn't been a clear enough likelihood of success in the merits to justify by providing this preliminary relief, particularly in the context of a weak showing of irreparable harm. And that's where I'm having trouble, finding an abuse of discretion in that scenario. Thank you. All right, thank you, counsel. You're over your time. May it please the court, Heather Garina on behalf of Appellee Dr. Lourdes Rudolph. There's two issues. One is that the appeal is moot because the only relief that was sought in the underlying request was to prevent dissemination, and dissemination occurred. If the injunction were obtained, then Rudolph would not be permitted to use the recordings in the two other lawsuits that he has pending for defamation. Actually, both Mr. Narduli and Mr. Verde, during the argument for the preliminary injunction, stated that they weren't trying to preclude the use of the substance of the recording for cross-examination, and that it could be used for impeachment. They were only seeking to prevent- If they say substance of an impeachment, that means they want to enjoin introducing it in the case in chief, the recording itself, as opposed to the content. And I would think they would want to introduce it in their case in chief. So the injunction matters. But in this case, they limited it. If you look at AER 106-16-18 and AER 111-16-22, and also AER 99-18-25, the appellants specifically state that they're only seeking to prevent dissemination, and that they acknowledge that the recording is admissions on the parties, their party admissions, and that they'd be subject to impeachment. And in this particular case, in the FRIO matter, the court went through great lengths to explain- Well, in this case, since Mr. Whipple died, he's not going to be testifying, so there won't be much occasion- Well, I guess he will be testifying through deposition. Well, actually, that issue actually goes to the balance of hardships to Dr. Rudolph because Mr. Whipple's testimony was never taken. He was never deposed? He was never deposed. No kidding. That means that they really will not be able to use the recordings at all. Well, that's not entirely true because they will be admitting evidence that relates to the letters that were signed as the basis for the expulsion, and they can use it for impeachment in order to show the state of the mind of the entity because Whipple was, at the time the statements were made, a defendant in the action and the president of SEI. But no question, if you get the injunction, then Rudolph can't use the tapes in his case in chief. I'm not entirely sure that is correct. But they can play the tapes. You are sure that they can play the tapes as impeachment? They can play the tapes as impeachment. And Avalante concedes that, you say? Yes. I see. And Dr. Rudolph can also testify to the entire content of the conversation. Of course. And so, obviously, that negates the harm. But the big issue here is whether or not it was confidential. And the court did not abuse its discretion in making factual determinations that there was no confidentiality. To Justice Klinefield's question about the difference between the way that the circuit courts have addressed the statute and the way that the state courts have addressed the statute. The district courts. The district courts, yes. In looking at the case law from my perspective, and Flanagan, Frio, and Sanders, I think, is a very good example. Sanders was a California Supreme Court case from 1999. It discusses a jury instruction that was introduced relating to whether or not 632 was violated. And the question for determining whether or not 632 applied related to whether there was a reasonable expectation that the conversation would be overheard. That was the question that was posed to the jury. And the jury answered yes. And the judgment was entered in favor of the defendant with respect to 632. Alito, have there been any cases? You heard my little hobby horse about a justem generis. I'm sorry, about? A justem generis, things of the same kind. Right. Have there been any decisions that have addressed that with respect to this statute? I would have expected it. I would think so. And I didn't see them. You know, there's not. I actually did a full search also on whether or not the injunction. You couldn't find them either. And I couldn't find that. What about on the overheard part? Anybody talking in a restaurant assumes that little snippets are going to be overheard. And I think most people talking in a restaurant assume the whole thing won't be overheard. I, if you look at the statute. How much do you have to anticipate people overhearing? The courts, State and Federal, have uniformly held that the legislature does not put in superfluous language. And you have to give meaning to everything within the statute. And if you look at the definition of 632C, it specifically says that in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard. Wait. You're not addressing my question. Sorry. Go ahead. I have a habit. I guess I've been a lawyer too long. Yes. I assume that when the waiter comes over, I stop talking about whatever I was talking about. And I don't resume until the waiter's gone. Nevertheless, I assume that little snippets of what I say may be audible to somebody. Right. And they may hear a couple of snippets. But being a lawyer a long time, they'll be kind of vague and incomprehensible. Just to maintain confidentiality. Nevertheless, they're going to overhear little bits. Somebody is, if they're walking by or something. But nobody's going to overhear the whole conversation. And what I want to know is, are there any decisions that say whether overheard means overheard substantially the entire conversation or overheard any snippet of the conversation? The courts haven't addressed that specific question about whether you have to hear the entire thing. However, the interpretation in Frio and the interpretation in Wilkins and the interpretation in Sanders is that if it is reasonable to expect that someone may overhear it, they don't have to. Overhear how much? What? It doesn't matter. If it could be overheard. So if I sit down with my opposing counsel talking about the case and I say, hi, Jim, it's good to see you. We sure had a good time in that other case. And somebody might overhear that, even though they don't hear the critical part where we start talking money. That's enough so it can be recorded. Yes. And it can be overheard. Because the statute only protects confidential communications that won't be overheard and that won't be recorded. How fact specific is that question, though? Because, you know, being in L.A., I've been in restaurants where I can hear every single word of the people. They're sitting right next to me. And it drives me nuts just because they crowd in all those tables. And you can really overhear everybody's conversation. And then there are other restaurants where the tables are more farther apart. It's a little quieter. And you can find your little private corner. Or a restaurant can be really crowded or it could be not have very many people at all. So the likelihood of being overheard could be greater or less. How does that factor into any of the cases? It has to be. It's very fact specific. And actually one of the courts of appeal recently provided a new decision in Night v. Cash Call. It was republished on November 4th of this month. And the court decertified a class which was claiming violation of 632 for recording phone calls. Because the court held that there had to be an independent factual determination in every single phone call to determine whether or not there was a reasonable expectation that the call would not be overheard or recorded. And that's why in this case there's been no facts established to show that there was clear error with the district court's interpretation of the facts presented that they didn't meet the confidentiality standard. Was the video introduced? It was. I mean maybe it's just the way the video appears on the screen. It doesn't seem like they're surrounded by anybody. I don't even see very many interruptions. There's a lot of music and noise in the background that might have been making it more difficult for people to overhear the conversation. Did the district court make any findings about that? The district court made specific statements that it saw other people at tables that appeared to be 10 feet away from a mirror. So if you, you know, doing the reflection you figure they're probably one or two tables away. And the court found that they didn't stop their flow when waiters were coming by and that the voice was loud. And as your honor mentioned, when you're in a restaurant, it's a public area, people can come and go. And there's no indication. Think of a more confidential place to have a confidential chat where I expect secrecy than a crowded sidewalk in New York City. Exactly. And spies talk to each other. They do it in public parks. This public place thing seems like nonsense to me. I'd have a lot more concern about being recorded by an adversary in his office than in a park. And my guess is that's why people meet in restaurants. What are we to make of the broader context, not just the physical context? Here's what I'm struggling with. Here's a man who meets with an adversary in a public place, reveals very damning material, and then afterwards says, I thought the conversation was confidential. It's ludicrous. It strains credulity, the idea. He's going to reveal my conversation. Wow, am I surprised. What was confidential about what was going on in that circumstance? And that's why there's nothing to show that in this case we're looking at an abusive discretion standard. And under the facts, it was reasonable. And there's nothing that appellants have pointed to at all to show that the determination was in error. What's happened in the cases? I would think this would be the most common surreptitious recording case, couples having marital problems. And they talk in a restaurant because you avoid scenes that way. And one of them wants to record the other because they think they can get the other one to say something indiscreet. I would guess that that is the most common case of this surreptitious recording. Are there any cases? I didn't see any. I didn't see any like that. The only restaurant case that I saw was Wilkins, in which the court found that they were in a restaurant on a patio around other people. There is another case where they talk about, I could find it in a minute, but it's on the motion to dismiss or demur standard. And the plaintiff had pled that they were in a restaurant. And the court said on the pleading stage, because you have to assume that what she's pled is true, if they were in a back room in a corner and no one could hear them, then maybe she could prevail. But the court said that didn't mean that she did prevail on the facts. It's like if you want to prevent surreptitious recording under your interpretation, you have to talk in a soundproof room and make sure the door is shut before you even say hello. If you look at the Sanders case, it talks about the difference between the protection under 632, which is for surreptitious recording, and then the protections under the Privacy Act. And Mr. Whipple, if he were still around, would still have protection under the Privacy Act if he could show that he expected it to be confidential and these were private. We disagree that he would be able to make that showing given the circumstances. But the statute doesn't take away all causes of action for privacy, regardless of circumstances. It merely says that the statute only prohibits recording if you can expect that no one's going to overhear you. And I think that in this day and age, when you're in a public restaurant where people can come and go, that not only is there an expectation that you'll be overheard- I don't know about that. I can't even hear the person I'm talking to at the restaurant because they have design noise. The architects design noise in. And I think we've all been at restaurants where we overhear the conversation next to us. If they're talking on a cell phone. Yeah. Or if there's recordings. And under this statute, and the way that the legislature has framed it, that's not protected. So I was on an airplane once, flying up to Oakland to hear an oral argument in San Francisco, and a woman, an attorney, was talking on her cell phone really loudly about the very case I was going to hear an oral argument on. And I wanted to tell her, please stop talking. This is a public place. There's people all around you. They can hear you. And you don't even know who they are. So I guess that's where I come- that's my feeling about it, is that you have to really go out of your way to make sure that it's confidential if you want it to be confidential. Cell phones on airplanes. I remember a case a couple years ago when an associate learned he was going to be fired because a partner was talking loudly on a cell phone in another seat on the plane a few aisles up. Wow. Oh, gosh. And it's just that the difference between what's confidential and what's not confidential is more striking now because it is so easy to hear and record and see. It seems like your interpretation really totally guts this California statute, and I don't know if the California courts have gone that far because nothing is confidential enough. That's not true because if you're in a- if you're in your home and the door is closed, if you're in an office, if you are in a private room where no one can come in- That's where people, if they're in any kind of adversarial relationship, may well expect recording. The nanny cam and the teddy bear. And that's what the statute is intended to prevent. But I guess the other part of this that bothers me, that Judge Ponzer keeps mentioning, is that it was adversarial, and there's- it's almost as though Mr. Wheeler didn't want it to be confidential because- to prevail in a case against Mr. Wheeler's company. Right. Mr. Whipple spoke about- Mr. Whipple, I'm sorry. Right. All of the confidence, and Dr. Rudolph knew that he was going to- He never said don't tell anyone you can't use it. No. Absolutely. He never said anything like that. Absolutely. And even if we could get past the confidentiality burden, which they haven't shown that, there's nothing to show that any of the other elements are satisfied in the preliminary injunction. And now that Mr. Whipple has passed, it is a hardship. And the public interest in having, you know, the truth come out at trial weighs much more strongly in favor of Dr. Rudolph. But does it really have to be on YouTube? I mean, that seems a little much. Anyway, thank you, counsel. Thank you. We put out an order that within 21 days, counsel will let us know if you're substituting a personal representative. Do you know the answer to that question now or not? I do not know the answer to that question now, Your Honor, but within the 21 days, the court will have our- All right. And I'm also wondering whether any of Mr. Whipple's privacy rights are affected by the fact that he has now passed away under that statute. Perhaps the parties could also brief that in 21 days? Yes, Your Honor. All right. Your Honor, may I request that we ask for three minutes for rebuttal? Do we have any time left? I know I went over a little bit. Let me just check something. You were over. I'm sorry. I can't give it to you because of other pressing matters regarding the court. We're briefing whether or not the 632 claim survives. Individually, Mr. Whipple's individual claim of a violation of the statutory provision 632 survives. And I'm sure you can just let us know in the same order that we asked for previously. All right. Safari Club International v. Rudolph will be submitted, and this session of the court is adjourned for today. Thank you.
judges: Ponsor, Kleinfeld, Wardlaw